## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**FIRST PLACE FINANCIAL CORP.**<br><br>                              **Debtor.** | Chapter 7<br><br>Case No. 12-12961(BLS) |
| **GEORGE L. MILLER,**<br>**Chapter 7 Trustee of First Place Financial**<br>**Corporation,**<br><br>                              **Plaintiff,**<br><br>v.<br><br>**PATTON BOGGS LLP (predecessor in**<br>**interest to SQUIRE PATTON BOGGS (US)**<br>**LLP)**<br><br>**and**<br><br>**SQUIRE PATTON BOGGS (US) LLP**<br>**(successor in interest to PATTON BOGGS**<br>**LLP),**<br><br>                              **Defendants.** | Adv. Pro. No.: _____ |

## COMPLAINT TO AVOID TRANSFERS PURSUANT TO 11 U.S.C. §§547
## AND TO RECOVER PROPERTY PURSUANT TO 11 U.S.C. §550 AND FOR
## DISGORGEMENT OF FEES PURSUANT TO 11 U.S.C. §§328(c) & 329(b)

George L. Miller, Chapter 7 Trustee of the bankruptcy estate of the Debtor, First Place

Financial Corporation (the "Trustee"), by his undersigned attorneys, in support of this Complaint

(the "Complaint") to avoid and recover preferential and/or fraudulent transfers against Patton

Boggs LLP (predecessor in interest to Squire Patton Boggs (US) LLP) ("SPB") and Squire

Patton Boggs (US) LLP (successor in interest to Patton Boggs LLP) ("Patton Boggs" and

collectively with SPB, the "Defendants" and each a "Defendant"), hereby alleges as follows:

## NATURE OF THE CASE

1.      This Complaint seeks to avoid and recover from the Defendants all preferential

transfers of property made by First Place Financial Corporation, (the "Debtor"), for or on account of an antecedent debt and to or for the benefit of the Defendants during the ninety (90) day period prior to the filing of the bankruptcy petition by the Debtor pursuant to 11 U.S.C. §§547 and 550.  To the extent that the Defendants have filed a proof of claim or have otherwise requested payment from the Debtor's chapter 7 estate (the "Claim"), this Complaint is not intended to be, nor should it be construed as, a waiver of the Trustee's right to object to such Claim for any reason including, but not limited to, 11 U.S.C. §502 (a) through (j) ("Section 502"), and such rights are expressly reserved.  The Trustee also seeks disgorgement of the retainer an all post-petition fees paid to the Patton Boggs by the Debtor or paid by other parties on behalf of the Debtor to the extent that this Court finds that the Patten Boggs was not disinterested and/or that Patton Boggs's disclosures were false, misleading, incomplete, inaccurate and/or inadequate.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this adversary proceeding, which arises under Title 11, or arises in or is related to a case under Title 11 in the United States Bankruptcy Court for the District of Delaware, *In re First Place Financial Corporation*, Case No. 12-12961, Chapter 7, pursuant to 28 U.S.C. §§157 and 1334(b).

3.      The claims and causes of action set forth herein concern the determination of claims under 11 U.S.C. §§502, 547, and 550.  This adversary proceeding is a "core" proceeding to be heard and determined by the Bankruptcy Court pursuant to 28 U.S.C. §157(b)(2).

4.      Venue is proper in the District of Delaware pursuant to 28 U.S.C. §1409.

## BACKGROUND

5.      On October 29, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

6.      On March 25, 2013, an order was entered converting the Chapter 11 case to a case under Chapter 7, and thereafter, George L. Miller was appointed as the Trustee for the estate of the Debtor.

7.      Prior to the Petition Date, the Debtor served as a unitary thrift holding company, owning 100% of the common stock of two non-debtor subsidiaries: First Place Bank (the "Bank"), a federally chartered stock savings association insured by the FDIC; and First Place Holdings, Inc. ("FPH"), a holding company for certain ancillary financial services business owned by the Debtor.  The Debtor conducted the bulk of its operations through the Bank, whose principal business consisted of accepting retail and business deposits from the general public and investing those funds primarily in one – to four – family residential mortgage, home equity, multifamily, commercial real estate, commercial and construction loans.

## PARTIES

8.      George L. Miller is the Chapter 7 Trustee of the above-captioned case and conducts business at 1628 John F Kennedy Boulevard, Suite 950, Philadelphia, PA 19103.

9.      Before its combination to form SPB, Patton Boggs was engaged in the business of providing legal services to clients across the nation and worldwide. Patton Boggs provided legal services to the Debtor both prior to and subsequent to the Petition Date.  Patton Boggs conducted business at 2550 M Street, NW, Washington DC 20037.

10.      On  June 1, 2014, PB and SPB issued a press release titled "Squire Sanders and Patton Boggs Complete Combination" which stated that "[o]ne of the world's most comprehensive legal platforms launches today as Squire Sanders and Patton Boggs combine to create Squire Patton Boggs. Squire Patton Boggs draws together the heritage, strength, reputation and resources of the legacy firms to create a new, integrated law firm with unparalleled local

connections and global influence."

11.     Defendant SPB is part of an international legal practice engaged in the business of providing legal services to clients across the nation and worldwide. Exactly like PB, SPB also conducts business at 2550 M Street, NW, Washington DC 20037 the day after the combination.

12.     As a result, PB is the predecessor in interest to SPB, and SPB is the successor in interest to PB and liable for the claims plead in this Complaint.

## FACTUAL BACKGROUND

### Transfers to Patton Boggs

13.     During the 90 day period prior to the Petition Date, Patton Boggs received certain transfers (each individually a "Transfer" and collectively the "Transfers") from the Debtor in the aggregate amount of $573,240.87, on account of the legal services performed by Patton Boggs for the benefit of the Debtor.  Each Transfer was made subsequent to and as payment for the services rendered and invoiced by Patton Boggs.

14.     The amount of each Transfer, the date of the Transfer, the method of each Transfer (check or wire transfer), the identification of the invoice(s) being paid by the Transfer, and the date on which the Transfer cleared are set forth on Exhibit A, attached hereto and incorporated herein by reference.

15.     On October 2, 2012, the Debtor issued Check No. 124665 in the amount of $39,509.34 (the "October 2 Transfer") payable to Patton Boggs on account of Invoice No. 10366336, dated August 24, 2012, for legal services in the amount of $418,149.66 (the "August 24 Invoice").

16.     On October 17, 2012, the Debtor made a wire transfer in the amount of $165,046.52 (the "October 17 Transfer") to Patton Boggs on account of Invoice No. 10367976,

dated September 24, 2012, for legal services in the amount of $230,786.99 (the "September 24 Invoice"), and Invoice No. 10369869, dated October 9, 2012, for legal services in the amount of $418,043.86 (the "October 9 Invoice").

17.     On October 26, 2012, the Debtor made a wire transfer in the amount of $368,685.01 (the "October 26 Transfer") to Patton Boggs on account of Invoice No. 10371604, dated October 23, 2012, for legal services in the amount of $455,074.81 (the "October 23 Invoice").

### Patton Boggs' False, Misleading, Inadequate, Inaccurate and/or Incomplete Disclosures

18.     As noted above, on October 29, 2012, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

19.     On November 19, 2012, the Debtor filed an *Application to Employ Patton Boggs LLP as Bankruptcy Counsel, Nunc Pro Tunc to the Petition Date* (the "Employment Application"), seeking to employ Patton Boggs as legal counsel to the Debtor in its Chapter 11 case.

20.     In support of the Employment Application, Patton Boggs submitted the *Declaration of Robert W. Jones in Support of Application to Employ Patton Boggs LLP* (the "Jones Declaration").

21.     The Employment Application and Jones Declaration disclosed that Patton Boggs received $214,015.55 in payments from the Debtor during the one year preceding the Petition Date.

22.     Specifically, the Employment Application states that:

> Pursuant to section 329 of the Bankruptcy Code, during the one year immediately preceding the Petition Date, as stated in the Jones Declaration, Patton Boggs believes that the Debtor paid to Patton Boggs fees totaling $214,015.55 for services rendered or to be rendered in connection with this bankruptcy proceeding, which fees were paid from the Debtor's estate.

5

23.     The Employment Application did not disclose any further payments made by the Debtor to Patton Boggs during the 90 days immediately preceding the Petition Date. Likewise the Jones Declaration disclosed the payment of $214,015.55 for services rendered to the Debtor in connection with the bankruptcy proceeding but did not disclose any other payments made by the Debtor to Patton Boggs for either bankruptcy services of for any other legal services rendered.

24.     The Debtor's records indicate that Patton Boggs actually received $573,240.87 in payments from the Debtor during the 90 day preference period (excluding a $250,000.00 transfer paid to Patton Boggs on October 26, 2012 as a retainer (the "Retainer Payment")).  The Retainer Payment is not included as part of the Transfers.

25.      In particular, Patton Boggs's disclosures did not describe the particular invoice(s) being paid, the payment dates, the amounts being paid or the method of each payment making up the $573,240.87 in aggregate payments during the 90 day preference period.

26.     Patton Boggs's disclosures failed to make the required disclosures that the $573,204.87 in Transfers were on account of antecedent debt.

27.     Thus, Patton Boggs did not disclose the entirety of the Transfers, but solely attempted to conceal from its disclosure to the amount paid in connection with the bankruptcy proceeding.  Furthermore, the Employment Application and Jones Declaration fail to disclose any details regarding the $359,225.32 in payments that Patton Boggs received from the Debtor (in addition to the $214,015.55 during the one year preceding the Petition Date).

28.     In addition, upon information and belief, prior to the Petition Date, Patton Boggs received over $300,000.00 for legal services in connection with the Debtor's bankruptcy proceeding (far more than $214,015.55 disclosed in the Jones Declaration).

29.     Thus, Patton Boggs's disclosures were false, misleading, inadequate, inaccurate

and/or incomplete.

30.     By failing to provide any details of the Transfers, including in particular those described above, Patton Boggs failed to disclose material information.

31.     As such, the Court and other interested parties were deprived of an opportunity to consider the effect of the alleged preferences on Patton Boggs's "disinterestedness" and eligibility to serve as the Debtor's post-petition counsel because the Defendant did not specifically disclose the transactions or the requisite details that would have prompted the inquiry.

32.     No objections were filed to the Employment Application, and it was approved by Order dated December 13, 2012.

33.     On June 27, 2013, the Court entered an *Omnibus Order Awarding Final Allowance of Compensation for Services Rendered and for Reimbursement of Expenses* (the "Final Fee Order"), which approved payment of $1,031,449.68 in fees and $18,289.41 in expenses to Patton Boggs for post-petition services rendered from October 29, 2012 through May 15, 2013.

34.     Due to Patton Boggs's false and inadequate disclosures, the Trustee did not discover Patton Boggs's receipt of preferences until after the Court's entry of the Final Fee Order.

35.     On February 7, 2014, the Trustee sent a demand letter to Patton Boggs, setting forth the Trustee's position with respect to the Transfers.

36.     On August 31, 2014, the Defendants sent a response to the Trustee, setting forth the Defendant's alleged defenses relating to the Transfers. The Trustee sent a reply to this correspondence on September 18, 2014, to which the Defendants responded on September 29, 2014.

37.     This Court has personal jurisdiction over the Defendants.

38.     SPB, as successor to Patton Boggs, is liable to the same extent Patton Boggs is

## CLAIMS FOR RELIEF

### COUNT I
### (Avoidance of Preferential  Transfers – 11 U.S.C. §547)

39.     The Trustee incorporates all preceding paragraphs as if fully re-alleged in this paragraph.

40.     On or within the 90-day period prior to the Petition Date, that is between July 31, 2012 and October 29, 2012 (the "Preference Period"), the Debtor made Transfers of interests in its property to Patton Boggs in the total amount of not less than $573,240.87.  Attached hereto as "Exhibit A" and incorporated herein by this reference is a list of Transfers presently known to Debtor.

41.     At the time of the Transfers, Patton Boggs had a right to payment on account of an obligation owed to Patton Boggs by the Debtor.

42.     The Transfers were to or for the benefit of a creditor within the meaning of 11 U.S.C. §§547(b)(1).

43.     The Transfers were for, or on account of, antecedent debts owed by the Debtor before the Transfers were made.

44.     The Debtor was insolvent at all time during the 90-day period prior to and including the Petition Date.

45.     As a result of the Transfers, Patton Boggs received more than it would have received if: (i) the Debtor's case were liquidated under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Patton Boggs received payment of its debts pursuant to the distribution provisions of the Bankruptcy Code.

46.     In accordance with the foregoing, the Transfers are avoidable pursuant to 11

U.S.C. §547(b).

47.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional Transfers made to the Defendants during the Preference Period.  It is the Trustee's intention to avoid and recover all transfers made by the Debtor of an interest of the Debtor to or for the benefit of the Defendants or any other transferee.  The Trustee reserves its right to amend this Complaint in order to include: (i) further information regarding the Transfers; (ii) additional Transfers, (iii) modifications of and/or revision to the Defendants' names, (iv) additional defendants, and/or (v) additional causes of action (including, but not limited to, 11 U.S.C. §§542, 544, 545, 548, 549, and 553), that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for any such amendments to relate back to this original Complaint.

## COUNT II
### (Recovery of Avoided Transfers – 11 U.S.C. §550)

48.    The Trustee incorporates all preceding paragraphs as if fully re-alleged in this paragraph.

49.    The Trustee is entitled to avoid the Transfers pursuant to 11 U.S.C. §547.

50.    Patton Boggs was the initial transferee of the Transfers or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Transfers were made.

51.    Pursuant to 11 U.S.C. §550(a), the Trustee is entitled to recover from the Defendants the Transfers, plus interest thereon to the date of payment and the costs of this action.

## COUNT III
### (Disallowance of all Claims – 11 U.S.C. §502(d) and (j))

52.    The Trustee incorporates all preceding paragraphs as if fully re-alleged in this

paragraph.

53.    The Defendants are entities from which property is recoverable under 11 U.S.C. §550.

54.    The Defendants are transferees of Transfers avoidable under 11 U.S.C. §547.

55.    The Defendants have not paid the amount of the Transfers, or turned over such property, for which the Defendants are liable under 11 U.S.C. §550.

56.    Pursuant to 11 U.S.C. §502(d), any and all Claims of the Defendants and/or their assignees, against the Debtor's estate or the Trustee must be disallowed until such time as such Defendant pays to the Trustee an amount equal to the aggregate amount of the Transfers, plus interest thereon and costs.

57.    Pursuant to 11 U.S.C. §502(j), any and all Claims of the Defendants, and/or their assignees, against the Debtor's estate or the Trustee previously allowed by the Debtor or the Trustee, must be reconsidered and disallowed until such time as such Defendant pays to the Trustee an amount equal to the aggregate amount of all of the Transfers.

**COUNT IV**
**(Disgorgement of Post-Petition Fees- 11 U.S.C. §§328(c) and 329(b))**

58.    Patton Boggs's disclosures were false, misleading, incomplete, inaccurate and/or inadequate.

59.     Although no objections to the Employment Application were filed, none of the facts, issues and claims asserted in this Complaint have been previously litigated.

60.    To the extent this Court determines that Patton Boggs's disclosures were false and inadequate and/or that Patton Boggs's was not "disinterested" as a result of the undisclosed payments it received from the Debtor before the Petition Date and/or that Patten Boggs was not

entitled to be employed as counsel to the Debtor pursuant to 11 U.S.C. §§327(a), the Defendants

shall, pursuant to 11 U.S.C. §§328(c) and 329(b), disgorge:  (i) the Retainer Payment and (ii) all

post-petition fees paid to Patton Boggs by the Debtor or paid by other parties on behalf of the

Debtor after the Petition Date.

## PRAYER FOR RELIEF

**WHEREFORE**, the Trustee requests that this Court grant it the following relief against

the Defendants:

As to Counts I through IV, that the Court enter a judgment against the

Defendants:

A.    That Transfers in the amount of not less than $573,240.87 be avoided
under 11 U.S.C. §547;

B.    That the Transfers, to the extent that they are avoided pursuant to 11
U.S.C. §547, be recovered by the Trustee pursuant to 11 U.S.C. §550,
together with interest thereon to the date of payment and the costs of this
action;

C.    Disallowing, in accordance with 11 U.S.C. §502(d), any Claims held by
the Defendants and/or their assignees until the Defendants satisfy the
judgment;

D.    Disallowing, in accordance with §502(j), any Claims held by the
Defendants and/or their assignees until the Defendants satisfy the
judgment;

E.    Awarding pre-judgment interest at the maximum legal rate running from
the date of each Transfer to the date of judgment herein;

F.  Awarding post-judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs;

G.  Requiring the Defendants to disgorge to the Trustee: (i) the Retainer Payment and (ii) all post-petition fees paid to Patton Boggs by the Debtor or paid by other parties on behalf of the Debtor after the Petition Date;

H.  Requiring the Defendants to pay forthwith the judgment amount awarded in favor of the Trustee;

I.  Granting the Trustee such other and further relief as the Court deems just and proper.

**FLASTER/GREENBERG P.C.**

Dated: October 28, 2014

*/s/ William J. Burnett*
William J. Burnett, Esquire (ID# 4078)
1000 N. West Street, Suite 1200
Wilmington, DE 19801
(302) 351-1910

Counsel for the Chapter 7 Trustee

12